# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| JC USA, Inc. d/b/a Jenny Craig, et al.,[1] | Case No. 23-10585 (JKS) |
| Debtors. | Jointly Administered |
| ADRIENNE ARRINGTON, et al., | |
| Plaintiffs, | |
| v. | Adv. Pro. No. 25-50002 (JKS) |
| H.I.G. CAPITAL MANAGEMENT LLC, et al., | **Related Dist. Ct. D.I. 34** |
| Defendants. | **Related Adv. D.I. 2** |

## OPINION[2]

Before the Court is the Defendant H.I.G. Capital Management LLC's ("H.I.G.") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f) (the "Motion"). Having considered the parties' submissions, and for the reasons set forth herein, the Court will grant the Motion, but will allow leave for the Plaintiffs to amend the Complaint.

---

[1]  The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are: JC USA, Inc. (0028), JC Franchising, Inc. (7656), Craig Holdings, Inc. (1506), Jenny C Acquisition, Inc. (2395), Jenny C Intermediate Holdings, Inc. (3621), and Jenny C Holdings, LLC (4170).

[2]  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND[3]

### I.   Procedural Background

On January 5, 2024, Plaintiffs (as defined herein) commenced this action by filing a complaint (the "Complaint") in the Superior Court of the State of California, County of Los Angeles, Case No. 24STCV00341 (the "State Court Action"),[4] against the following defendants: H.I.G.; Encina Private Credit SPV, LLC (which was subsequently dismissed);[5] John Doe 1-5, Mandy Dowson, former CEO of Jenny Craig; and Does 1-50.[6]  On February 8, 2024, the State Court Action was removed to the U.S. District Court for the Central District of California[7] and, on May 3, 2024, was transferred to the U.S. District Court for the District of Delaware.[8]  On January 7, 2025, the Delaware District Court granted the Defendant HIG's motion to refer the case to this Court.[9]

The Complaint asserts six counts: (1) failure to provide worker adjustment and retraining notification under the California Labor Code (the "California WARN Act"), (2) unpaid wages and waiting time penalties under the California Labor Code, (3) failure to provide rest and meal breaks in accordance with the California Labor Code, (4) failure to reimburse business expenses

---

[3] Filings in the District Court case, *Adrienne Arrington, et al. v. H.I.G. Capital Management LLC, et al.*, No. 24-00550 (RGA) (D. Del. 2024) are cited herein as "Dist. Ct. D.I. __." Filings in the bankruptcy court adversary proceeding, *Adrienne Arrington, et al. v. H.I.G. Capital Management LLC, et al.*, Adv. Pro. No. 25-50002 (JKS) (Bankr. D. Del. 2025) are cited herein as "Adv. D.I. __."

[4] *See generally* Complaint.

[5] Dist. Ct. D.I. 25 (Joint Stipulation to Dismiss Defendant Encina Private Credit SPV, LLC).

[6] Complaint at ¶¶ 3–12.

[7] Dist. Ct. D.I. 7 (Notice of Assignment to District Judge Welsey L. Hsu and Magistrate Judge A. Joel Richlin).

[8] Dist. Ct. D.I. 32 (Record of case transferred in from District of California Central).

[9] Dist. Ct. D.I. 55 ("As a result, it is 'conceivable' that his action could impact the Jenny Craig bankruptcy because if plaintiffs are successful here, it would impact the outcome of plaintiffs' proofs of claims in the Jenny Craig bankruptcy and any distribution to creditors. Plaintiffs also seek to hold certain individual defendants 'personally liable for all the labor code violations' as owners, directors, or managing agents, which gives rise to potential claims for statutory indemnification against Jenny Craig.  Based on the foregoing, this action is 'related to' the Jenny Craig bankruptcy and therefore supports referral to the Bankruptcy Court.").

in accordance with the California Labor Code, (5) failure to provide COBRA (as defined below) notice, and (6) breach of contract as to medical insurance benefits.[10]

H.I.G. filed the Motion and brief in support of the Motion ("Opening Brief") on May 17, 2024.[11]  The Plaintiffs (as defined herein) filed a brief in opposition ("Opposition Brief") to the Motion on May 31, 2024.[12]  H.I.G. filed its reply ("Reply") on June 7, 2024.[13]  A Notice of Completion of Briefing was filed on February 27, 2025.[14]  This is the Court's ruling.

## II.    Factual Allegations[15]

Jenny Craig was a weight loss, weight management, and nutrition company operating since 1983.[16]  H.I.G. acquired Jenny Craig, Inc. ("Jenny Craig") in or around 2019.[17]  The Complaint alleges that in or around 2022, Jenny Craig was in dire financial condition in part due to the mismanagement and misappropriation by H.I.G.[18]  In May of 2023, Jenny Craig closed all its offices and laid off the named plaintiffs, each of whom were employees of Jenny Craig at the time (collectively, the "Plaintiffs").[19]

The Complaint alleges that on or around April 25, 2023, Jenny Craig, while under the control of H.I.G., sent an email to a selective group of corporate employees announcing Jenny

---

[10]  *See generally* Complaint.

[11]  Dist. Ct. D.I. 35.

[12]  Dist. Ct. D.I. 46.

[13]  Dist. Ct. D.I. 47.

[14]  Adv D.I. 4.

[15]  The Court adopts the facts from the Complaint, accepting all of the Complaint's well-pleaded facts as true and disregarding any legal conclusions.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203-210-11 (3d Cir. 2009).

[16]  Complaint at ¶ 17.

[17]  *See* Complaint at ¶ 19.

[18]  Complaint at ¶ 20.

[19]  *See* Complaint at ¶ 24.

Craig's upcoming closure, while keeping the information from all other employees.[20]  According to the Complaint, most of the Plaintiffs did not receive said email.[21]  The Complaint further states that despite the requirement that a 60-day notice be given to employees, H.I.G. did not give required advance notice of the layoff.[22]

On the day of the mass layoff, some employees received informal communications from supervisors telling them not to come to work, while others went to work as usual only to find that the location was closed and they could not access their belongings inside.[23]  The Complaint further states the Plaintiffs either did not receive a paycheck for their last pay period or received one but were unable to cash it as defendants did not reserve enough cash to pay outstanding wages and benefits.[24]  In addition, the Complaint alleges the Plaintiffs had outstanding paid time off that was never paid, had deductions from paychecks while the Defendants failed to maintain their medical insurance, incurred business expenses that were not reimbursed, and were told at the time of hiring they were entitled to severance based on the length of time they worked at the company.[25]

Jenny Craig filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 5, 2023.[26]

---

[20] Complaint at ¶ 23.

[21] Complaint at ¶ 23.

[22] Complaint at ¶ 26.

[23] Complaint at ¶ 27.

[24] Complaint at ¶ 29.

[25] Complaint at ¶¶ 30–33

[26] *See generally JC USA*, Case No. 23-10585 (JKS).

## JURISDICTION

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b), and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.  Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012(b), challenges the sufficiency of the factual allegations in the complaint.[27]  Rule 12(b)(6) is related to Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[28] When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."[29]  Two "working principles" underly this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.[30]

---

[27] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[28] Fed. R. Civ. P. 8(a)(2) and 12(b)(6), Fed. R. Bankr. P. 7008 and 7012.

[29] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (citation omitted).

Under this pleading standard, a complaint must nudge claims "across the line from conceivable to plausible."[31]  The movant carries the burden of showing that dismissal is appropriate.[32]  The relevant record for consideration includes the Complaint and any document "integral to or explicitly relied upon in the complaint."[33]

In analyzing a motion to dismiss, the Third Circuit instructs courts to follow a three-part analysis.  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[34]  Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[35]  Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[36]  After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[37]

## ANALYSIS

### I.    Choice of Law

In analyzing the Motion, the Court must first determine which state law applies to the causes of action alleged in the Complaint—Delaware or California.  The Plaintiffs argue California has a significantly stronger relationship with the dispute than Delaware because the Plaintiffs are California residents, the alleged employment and labor violations occurred in

---

[31]  *Twombly*, 550 U.S. at 547.

[32]  *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).

[33]  *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997)).

[34]  *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675).

[35]  *Id.*; *See also Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 679).

[36]  *Santiago*, 629 F.3d at 130.

[37]  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

California, Jenny Craig was headquartered in California, most witnesses and evidence are located in California, and the majority of Plaintiffs' claims are California state law claims.[38] H.I.G. argues Delaware law could apply because H.I.G. is a Delaware LLC, but also recognizes that "California law arguably governs Plaintiffs' claims, because California likely has the most significant relationship to Plaintiffs' claims arising from alleged violations of the California Labor Code . . . ."[39]

Applying the Restatement (Second) of Conflict of Law's "most significant relationship" test to determine which state law applies,[40] the Court finds that California is the state with the most significant relationship to the Plaintiffs' claims. More specifically, and as acknowledged by the parties, the Plaintiffs are California residents asserting employment and labor violations which occurred in California in violation of the California Labor Code. Accordingly, the Court will apply California law where relevant.

## II.    The Complaint Fails to Adequately Plead that H.I.G. was an Employer

Each of the six causes of action in the Complaint is premised on an employer-employee relationship and the parties disagree about whether H.I.G. qualifies as an employer. H.I.G. argues the Complaint fails to assert any legal theory whereby H.I.G. could be liable for causes of

---

[38] Opposition Brief at 4.

[39] Opening Brief at 6.

[40] *See Certain Underwriters at Lloyds v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017) (citing *Deuley v. DynCorp Intern., Inc.*, 8 A.3d 1156, 1160 (Del. 2010); *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1166 (Del. 1978)). *See also Focus Fin. Partners, LLC v. Holsopple*, 241 A.3d 784, 805 (Del. Ch. 2020) (citing *Restatement (Second) of Conflict of Laws* § 6(2) (1971)). In Delaware, courts use the most significant relationship test from Restatement (Second) of Conflict of Laws § 145 to determine which state's law governs a tort claim. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 725 (D. Del. 2011). Under that test, the court must evaluate the relative importance of four factors: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." For tort claims, "the applicable law will usually be the local law of the state where the injury occurred," unless some other state has a more significant relationship. Restatement (Second) of Conflict of Laws § 156.

action arising from the Plaintiffs employment with Jenny Craig.  In addition, it contends the Complaint fails to allege any facts that speak to H.I.G.'s involvement in the management of Jenny Craig's employees, and that allegations that Jenny Craig was "under the control" of H.I.G. are insufficient.[41]  The Plaintiffs argue the allegations are sufficient to establish H.I.G.'s status as an employer, both under common law and under the IWC wage order number 12-2001 definition of "employer."  The Plaintiffs also raise new allegations, for the first time in their Opposition Brief, that H.I.G. qualifies as an employer as a common law joint employer or as an alter-ego of Jenny Craig.[42]

As a preliminary matter, the Third Circuit has held, "we do not consider after-the-fact allegations in determining the sufficiency of . . . complaint[s]."[43]  "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."[44] Consequently, the allegations raised for the first time in the Opposition Brief are not considered in determining the sufficiency of the Complaint.  Nevertheless, the Court will address the theories in the context of what is alleged in the Complaint.

### A.  The Plaintiffs' Joint Employer Theory

Courts apply the "integrated enterprise" test to causes of action arising from alleged violations of the California Labor Code where a plaintiff seeks to hold the parent corporation liable for California Labor Code violations.[45]  When determining whether entities are liable as a

---

[41]  *See* Opening Brief at 8–11.

[42]  *See* Opposition Brief at 6–10.

[43]   *Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007).

[44]  *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[45]  *See Benyamin v. Topgolf Payroll Servs., LLC*, No. 2:23-cv-00303-DAD-SCR, 2025 U.S. Dist. LEXIS 41819, at *9 (E.D. Cal. Mar. 6, 2025); *Reyna v. WestRock Co.*, No. 20-cv-01666-BLF, 2020 U.S. Dist. LEXIS 153575, 2020 WL 5074390, at *4 (N.D. Cal. Aug. 24, 2020); *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2018 U.S. Dist. LEXIS 133791, at *3 (N.D. Cal. Aug. 8, 2018); *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737

an integrated enterprise, courts consider four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.[46]

The Complaint alleges certain unidentified individuals were managers of H.I.G., "managing the operation of Jenny Craig, Inc., as well as employees of Jenny Craig, Inc."[47]  It also alleges that H.I.G. acquired Jenny Craig in or around 2019, and that Jenny Craig was "under the control of Defendants . . . ."[48]

The allegations in the Complaint fall short of satisfying the four-factor test.  To make a sufficient showing of interrelation of operations, a plaintiff must allege facts that suggest "that the parent has exercised control 'to a degree that exceeds the control normally exercised by a parent corporation.'"[49]  The Complaint includes no such allegations.  To make a showing of the second factor, common management, requires evidence that an employee serves as a manager of both corporations or evidence that a manager of one company influenced day-to-day managerial

---

(1998).  The Plaintiffs cite to *Mattei v. Corp. Mgmt. Sols., Inc.*, 52 Cal. App. 5th 116 (2020) for the proposition that "a plaintiff must demonstrate that the defendant is an employer as defined in IWC wage order No. 12-2001."  Wage order No. 12-2001 provides, "[t]his order shall apply to all persons employed in the motion picture industry . . . ."  This case does not involve persons employed in the motion picture industry.  As a result, the wage order No. 12-2001 definition not relevant here.

[46]  *Luna v. Universal Studio City Prods., LLLP*, No. CV 12-9286 PSG (SSx), 2013 U.S. Dist. LEXIS 203001, at *9 (C.D. Cal. Aug. 27, 2013) (citing *Laird*, 68 Cal. App. 4th at 737); *Huse v. Auburn Honda*, No. Civ. S-04-0227 DFL/JFM, 2005 U.S. Dist. LEXIS 45494, *3, n.3 (E.D. Cal. 2005) (employing the integrated enterprise test to determine whether a defendant was an employer within the meaning of the California Labor Code); *Serrano v. 180 Connect, Inc.*, No. C 06-1363 TEH, 2006 U.S. Dist. LEXIS 61035, *2–3 (N.D. Cal. 2006) (employing the integrated enterprise test in an action arising from alleged California Labor Code violations), *rev'd on other grounds* 478 F.3d 1018 (9th Cir. 2007).

[47]  Complaint at ¶¶ 5–10.

[48]  Complaint at ¶¶ 19, 23.

[49]  *Laird*, 68 Cal. App. 4th at 737 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993)).

decisions of the other company.[50]   Again, the Complaint includes no such allegations.[51]   There

likewise are no specific facts alleged that support the third factor, centralized control of labor

relations.[52]   Finally, as to the fourth factor, common ownership or financial control, "common

ownership or control alone is never enough to establish parent liability."[53]

    The Complaint therefore fails to allege H.I.G.'s liability as a single employer.

## B.  The Plaintiffs' Alter-Ego Theory

    "In California, two conditions must be met before the alter ego doctrine will be invoked.

First, there must be such a unity of interest and ownership between the corporation and its

equitable owner that the separate personalities of the corporation and the shareholder do not in

reality exist.  Second, there must be an inequitable result if the acts in question are treated as

those of the corporation alone."[54]  "Among the factors to be considered in [determining whether

there is such a unity of interest and ownership] are commingling of funds and other assets of the

two entities, the holding out by one entity that it is liable for the debts of the other, identical

equitable ownership in the two entities, use of the same offices and employees, and use of one as

a mere shell or conduit for the affairs of the other."[55]  "Other factors which have been described

in the case law include inadequate capitalization, disregard of corporate formalities, lack of

segregation of corporate records, and identical directors and officers."[56]  Conclusory allegations

---

[50]  *Id.* at 740.

[51]  *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) ("Plaintiffs' general statement that Wal-Mart exercised control over their day-to-day employment is a conclusion, not a factual allegation stated with any specificity. We need not accept Plaintiffs' unwarranted conclusion in ruling on a motion to dismiss.").

[52]  *See id.*

[53]  *Luna*, 2013 U.S. Dist. LEXIS 203001, at *16 (citing *Laird*, 68 Cal. App. 4th at 738).

[54]  *Sonora Diamond Corp. v. Sup. Ct.*, 83 Cal. App. 4th 523, 538 (2000).

[55]  *Roman Catholic Archbishop v. Sup. Ct.*, 15 Cal. App. 3d 405 (1971).

[56]  *Sonora Diamond*, 83 Cal. App. 4th at 539.

of alter ego status are inadequate; instead, the "plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each."[57]  Under California law, alter ego is "an extreme remedy, sparingly used."[58]

There is no mention of an agency relationship or alter ego in the Complaint. Furthermore, the Complaint fails to allege that either of the two conditions required under California law were met.  There are likewise no factual allegations in the Complaint of the various enumerated factors courts consider when determining a unity of interest and ownership, other than the conclusion that H.I.G. had "control" over Jenny Craig.[59]  Instead, the theory is raised for the first time in the Opposition Brief, with no facts to support the allegation.

For the reasons discussed above, the Court finds the Plaintiffs failed to adequately plead H.I.G.'s responsibility as an employer.

## III.   The Complaint Impermissibly Lumps All Defendants

H.I.G. next argues that the Plaintiffs impermissibly lump H.I.G. with the other defendants and it is impossible to know which allegations are intended to support which claims against H.I.G..[60]  The Plaintiffs counter that there are only two remaining named defendants, and that the Complaint alleges, "Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned herein, each of the individual defendants was at all times the owner, director or managing agent of the corporate defendants pursuant to California Labor Code Section 558.1 and caused the violations set forth herein, and thus are personally liable for all the labor code

---

[57]  *Serenity Transp.*, 141 F. Supp. 3d at 984 (citing *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040–41 (N.D. Cal. 2014); *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003)).

[58]  *Id.*; *accord Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 501 F. Supp. 3d 886, 895 (E.D. Cal. 2020).

[59]  *See Doe I v. Wal-Mart Stores*, 572 F.3d at 683.

[60]  Opening Brief at 11.

violations."[61]  The Plaintiffs further maintain they adequately allege that H.I.G. is an "employer" for the purpose of surviving a motion to dismiss.[62]  The Plaintiffs contend the Complaint therefore places H.I.G. on sufficient notice of the claims asserted against it such that H.I.G. can evaluate the factual and legal bases of the claims at this stage in the litigation.[63]

Case law makes clear that plaintiffs cannot combine allegations against multiple defendants.[64]  The applicable pleading standard requires defendants be given "fair notice of what . . . the claim is and the grounds upon which it rests."[65]  "The problem posed by collective-style pleading is that particular defendants may not be adequately apprised of the conduct they are alleged to have engaged in."[66]

Here, the Complaint impermissibly lumps the defendants together such that H.I.G. is not adequately apprised of the conduct it is alleged to have engaged in.  For example, the Complaint alleges "Defendants did not reserve enough cash to pay for employees' outstanding wages and benefits,"[67] but fails to specify which of the 50 individual defendants or two remaining corporate

---

[61] Complaint at ¶ 16.

[62] Opposition Brief at 10.

[63] Opposition Brief at 10–11.

[64] *See T-Jat Sys. 2006 v. Expedia, Inc.*, No. 16-581-RGA-MPT, 2017 U.S. Dist. LEXIS 31714, at *14 (D. Del. Mar. 7, 2017); *Mayne Pharma Int'l PTY Ltd. v. Merck & Co., Inc.*, No. 15-438-LPS-CJB, 2015 U.S. Dist. LEXIS 162912, (D. Del. Dec. 3, 2015) (finding pleadings sufficient despite plaintiff "lumping together its allegations against three Defendants" because that section of plaintiff's complaint "incorporated 'each of the [complaint's] preceding paragraphs,'" including sections that identified each defendant's individual activities); *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1119 (E.D. Cal. 2014) ("The complaint lumps defendants without facts to distinguish their individual alleged wrongs."); *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 U.S. Dist. LEXIS 66233, at *13 (C.D. Cal. June 30, 2010) ("[E]ach claim incorporates 197 other paragraphs 'as if fully set forth [t]herein' . . . This shotgun pleading style deprives Defendants of knowing exactly what they are accused of doing wrong.").

[65] *Twombly*, 550 U.S. at 555.

[66] *Capitol Records LLC v. ReDigi Inc.*, No. 12-cv-95 (RJS), 2014 U.S. Dist. LEXIS 122711, at *7 (S.D.N.Y. Sep. 2, 2014) (citing *Pietrangelo v. NUI Corp.*, No. 04-cv-3223 (GEB), 2005 U.S. Dist. LEXIS 40832, at *10 (D.N.J. July 20, 2005) (noting that the danger of collective-style pleading is that "the allegations are so general that they fail to put each defendant on notice of the claims against them")).

[67] Complaint at ¶ 44.

defendants had had a duty to reserve cash and failed to do so.  In another instance, the Complaint

alleges "Defendants are qualifying employers" under COBRA[68], without specifying which

defendants were the qualifying employers.  In another example, the sixth cause of action alleges

"Defendants and Plaintiffs went into a contract when Defendants offered Plaintiff medical

insurance as a benefit of their employment with Jenny Craig, Inc.,"[69] but does not specify which

defendants were the counterparties to the contract.

Because each cause of action contains the same general allegations against "Defendants,"

the Complaint must be dismissed for failure to place H.I.G. on notice of the claims against it.

## IV.    The Complaint Fails to Allege a Plausible Claim for Relief Under the California WARN Act

The Complaint alleges that H.I.G. failed to give the required advance notice of layoffs in

violation of the California WARN Act.[70]  The California WARN Act states, "[a]n employer may

not order a mass layoff, relocation, or termination at a covered establishment unless, 60 days

before the order takes effect, the employer gives written notice of the order . . . ."[71]  The

California Labor Code defines "Employer" as "any person, as defined by Section 18, who

directly or indirectly owns and operates a covered establishment.  A parent corporation is an

employer as to any covered establishment directly owned and operated by its corporate

subsidiary."[72]  Section 18 defines person to mean "any person, association, organization,

partnership, business trust, limited liability company, or corporation." [73]

---

[68] Complaint at ¶ 61.

[69] Complaint at ¶ 72.

[70] Complaint at ¶ 39.

[71] CAL. LAB. CODE § 1401(a).

[72] *Id.* § 1400.5.

[73] *Id.* § 18.

The decision in *In re HMR Foods* is on point.  That case involved the Delaware bankruptcy court analyzing California WARN Act claims asserted against a third-party entity which owned the underlying employer.  The court there explained, "[t]he plain language of this section, read in conjunction with the definition of 'employer,' provides that a parent corporation may also be liable *if it orders a shut down in violation of the Act*."[74]  "This result becomes apparent if we replace the word 'employer' with 'parent company' in § 1401(a) so that the provision reads: a parent company may not order a mass layoff, relocation, termination at a covered establishment unless, 60 days before the order takes effect, the parent company gives written notice of the order."[75]  Further, the court recognized that the plain language of the California WARN Act does not hold parent companies strictly liable for the subsidiaries' liability.[76]  Ultimately, the court granted the motion to dismiss the California WARN Act claims because the complaint failed to adequately allege that the parent company ordered the store closings.

Here, the Complaint does not allege that H.I.G. ordered any layoff or termination.  The Complaint states, "On or around May 1, 2023, Jenny Craig Inc., while under the control of Defendants H.I.G. and Encina Private Credit, closed all of its offices while laying off Plaintiffs, who were employees of Jenny Craig Inc., at the time of its sudden closure."[77]  Contrary to the assertions in the Plaintiffs' Opposition Brief,[78] nothing in the Complaint alleges H.I.G. controlled

---

[74] *Cruz v. HMR Foods Holding, LP (In re HMR Foods Holding, LP)*, 602 B.R. 855, 877 (Bankr. D. Del. 2019) (emphasis added in original).

[75] *Id.*

[76] *Id.*

[77] Complaint at ¶ 24.

[78] *See* Opposition Brief at 9 ("Plaintiff's allegations regarding H.I.G.'s control and management of employment and labor decisions sufficiently sets forth a claim that H.I.G. was a joint employer with Jenny Craig.").

labor and employment decisions or ordered anything with respect to employment at Jenny Craig.

Without more, the Complaint is insufficient to support a claim that H.I.G. ordered the layoffs.

The Plaintiffs have not alleged sufficient facts to support a plausible claim under the

California WARN Act, so the Motion will be granted as to the first cause of action.

## V.    The Second, Third, and Fourth Causes of Action Fail to Plead Sufficient Factual Support

H.I.G. argues the second, third, and fourth causes of action also fail because they merely

recite an employer's obligations with a statement that the defendants failed to comply.

Furthermore, it argues the Complaint fails to specify which of the 133 named Plaintiffs allegedly

did not receive paychecks, suffered meal and/or rest break violations, or were not reimbursed for

business expenses.[79]  The Plaintiffs counter that the District Court of California has held, "[o]ther

courts have agreed that plaintiffs need not plead particular instances of unpaid overtime before

being allowed to proceed to discovery."[80]  They further argue the allegations in the Complaint

provide specific factual allegations that amount to more than a "formulaic recitation" of the

elements of the causes of action.[81]

California courts often dismiss employment claims when a complaint merely recites an

employer's legal obligations and states that the employer failed to comply.[82]  When pleading

---

[79]  Opening Brief at 12.

[80]  Opposition Brief at 11 (citing *Varsam v. Lab'y Corp. of Am.,* 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015)).

[81]  *Id.* at 11–12.

[82]  *See Ovieda v. Sodexo Operations, LLC*, No. CV 12-1750-GHK (SSx), 2012 U.S. Dist. LEXIS 173844, at *6 (C.D. Cal. May 7, 2012); *Lefevere v. Pacific Bell Directory*, No. 14-cv-03803-WHO, 2014 U.S. Dist. LEXIS 158630, at *5 (N.D. Cal. Nov. 7, 2014); *Dawson v. HITCO Carbon Composites, Inc.*, No. CV16-7337 PSG FFMx, 2017 U.S. Dist. LEXIS 220221, at *1 (C.D. Cal. Jan. 20, 2017); *see also Weigele v. FedEx Ground Package Sys.*, No. 06–CV–1330 JLS (POR), 2010 U.S. Dist. LEXIS 120475, at *11–12 (S.D. Cal. Nov. 15, 2010) (dismissing complaint alleging that "Defendant required the Plaintiffs to work overtime without lawful compensation" and that "Defendant required Plaintiffs to work . . . without being given a 30–minute meal period for shifts of at least five hours and second 30–minute meal periods for shifts of at least ten hours during which Plaintiffs were relieved of all duties and free to leave the premises, nor did Defendant pay any Plaintiffs . . . one hour's pay at the employee's

claims for violations of the California Labor Code, "(1) stating various obligations California law imposes upon employers, (2) averring simply that Defendant violated those laws, and (3) claiming damages and an entitlement to penalties and other relief" is insufficient.[83]

The Plaintiffs cite to *Varsam v. Laboratory Corporation of America*[84] in support of their position that plaintiffs need not plead particular instances of violations before being allowed to proceed to discovery.[85]   However, the complaint in *Varsam* is distinguishable as it included specific actions of the defendants and various examples of alleged wrongdoing which the court relied on when denying the motion to dismiss.[86]   Here, the Complaint does not contain any specifics or examples of purported wrongs that support the bare allegations.[87]   Instead, the

---

regular rate of pay as premium pay compensation for failure to provide . . . meal periods"); *Anderson v. Blockbuster Inc.,* No. 2:10–cv–00158–MCE–GGH, 2010 U.S. Dist. LEXIS 53854, at *6 (E.D. Cal. May 4, 2010) (dismissing complaint alleging that "Plaintiff and class members consistently worked in excess of eight hours in a day, in excess of 12 hours in a day and/or in excess of 40 hours in a week" and that "Defendants willfully failed to pay all overtime"); *Harding v. Time Warner, Inc.,* No. 09cv1212–WQH–WMC, 2009 U.S. Dist. LEXIS 72851, at *8–9, 2009 WL 2575898 (S.D. Cal. Aug. 18, 2009) (dismissing complaint alleging that employer failed to "pay and properly calculate overtime" and "provide uninterrupted Meal Periods"); *Deleon v. Time Warner Cable LLC*, CV 09-2438 AG (RNBx) 2009 U.S. Dist. LEXIS 74345, at *6 (dismissing complaint alleging that "[d]uring the relevant time period, Defendants willfully required Plaintiff and class members to work during meal periods and failed to compensate Plaintiff and class members for work performed during meal periods").

[83]  *See Ovieda*, 2012 U.S. Dist. LEXIS 173844, at *4–5.

[84]  120 F. Supp. 3d 1173 (S.D. Cal. 2015).

[85]  Opposition Brief at 11.

[86]  *See Varsam v. Lab'y Corp. of Am.*, No. 14-cv-02719-BTM-JMA (S.D. Cal 2015), D.I. 1; *Varsam*, 120 F. Supp. 3d at 1178–79 (relying on specifics including, but not limited to: a failure "to schedule a sufficient number of PSTs for their locations;" "members of the putative class worked more than forty hours a week;" "when employees 'regularly worked off-the-clock that should have been compensated at an overtime rate,' they were required to 'not accurately record their time worked;'" employees "were forced to clock out for 'scheduled' rest periods but [were not paid] for such rest periods;" "defendants 'failed to schedule a sufficient number of employees and strongly discouraged additional time being worked beyond scheduled shifts,' and 'forced' putative class members 'to clock out but continue working, wait extended periods of time before taking a meal period, or have their meal period interrupted by Defendants' managers;'" and "Defendants' failure to properly staff and coordinate the schedules of Plaintiff and class members, and their policy of strongly discouraging any additional hours being worked beyond scheduled shifts, forced Plaintiff and class members to work through all or part of their rest breaks").

[87]  *Lefevre v. Pac. Bell Directory*, 2014 U.S. Dist. LEXIS 158630, at *9.

Complaint is more akin to the complaints courts routinely dismiss for failure to state a claim under the California Labor Code.[88]

As to the second claim for relief, the only allegations of H.I.G.'s wrongdoing in connection with unpaid wages and waiting time penalties is that "Plaintiffs either did not receive a paycheck for their last pay period, or received a paycheck by mail, but were not able to cash the check as Defendants did not reserve enough cash to pay for employees' outstanding wages and benefits," and "Plaintiffs had outstanding Paid Time Off that was never paid out."[89]  These allegations fall well short of the facts plead in support of unpaid wages and waiting time penalties in *Varsam*, for example,[90] and are conclusory statements which fail to meet the legal requirement.

With respect to the third claim for relief, the only factual allegation of H.I.G.'s wrongdoing in connection H.I.G.'s failure to provide rest and meal breaks is that "Defendants

---

[88] *See Ovieda,* 2012 U.S. Dist. LEXIS 173844, at *6; *Lefevere*, 2014 U.S. Dist. LEXIS 158630, at *5; *Dawson*, 2017 U.S. Dist. LEXIS 220221, at *1; *see also Weigele*, 2010 U.S. Dist. LEXIS 120475, at *11–12 (dismissing complaint alleging that "Defendant required the Plaintiffs to work overtime without lawful compensation" and that "Defendant required Plaintiffs to work . . . without being given a 30–minute meal period for shifts of at least five hours and second 30–minute meal periods for shifts of at least ten hours during which Plaintiffs were relieved of all duties and free to leave the premises, nor did Defendant pay any Plaintiffs . . . one hour's pay at the employee's regular rate of pay as premium pay compensation for failure to provide . . . meal periods"); *Anderson*, 2010 U.S. Dist. LEXIS 53854, at *6 (dismissing complaint alleging that "Plaintiff and class members consistently worked in excess of eight hours in a day, in excess of 12 hours in a day and/or in excess of 40 hours in a week" and that "Defendants willfully failed to pay all overtime"); *Harding*, 2009 U.S. Dist. LEXIS 72851, at *8–9 (dismissing complaint alleging that employer failed to "pay and properly calculate overtime" and "provide uninterrupted Meal Periods"); *Deleon*, 2009 U.S. Dist. LEXIS 74345, at *6 (dismissing complaint alleging that "[d]uring the relevant time period, Defendants willfully required Plaintiff and class members to work during meal periods and failed to compensate Plaintiff and class members for work performed during meal periods").

[89] Complaint at ¶¶ 44, 45.

[90] *Varsam*, 120 F. Supp. 3d at 1179. ("However, in addition to alleging that Defendant 'wilfully failed to pay' owed wages . . . Plaintiff has alleged facts of a regular practice by Defendant of requiring Plaintiff and class members to work off-the-clock during meal periods, rest periods, and after scheduled shifts. Plaintiff also alleged facts of a regular practice by Defendant of not paying overtime or premiums for missed meals and rest breaks . . . . The Complaint also includes the allegation that Plaintiff was employed by Defendant for 'approximately 8 years ending in 2013.'").

failed to provide mandated meal and rest periods to some of the Plaintiffs."[91]  This too falls well

short of the facts plead in cases such as *Varsam*,[92] which included specific allegations of

employees being forced to clock out for scheduled rest periods but not being paid for such rest

periods, a failure to schedule a sufficient number of employees, strongly discouraging work

beyond scheduled shifts, and forcing employees to work through all or part of their rest breaks.[93]

Regarding the fourth claim for relief, the only allegation in support of H.I.G.'s failure to

reimburse business expenses is that "Defendants failed to reimburse Plaintiffs for the business

expenditures and/or losses they incurred."[94]  This too is a recitation of the legal standard and a

conclusory statement that H.I.G. failed to follow that standard.

The Complaint fails to allege specific wrongdoing beyond bare assertions that H.I.G.

failed to comply with the applicable law, including a failure to identify how or why H.I.G. is

responsible for the alleged wrongs while the Plaintiffs were employed by Jenny Craig at the

time.  Without more, the allegations in the Complaint in support of the second, third, and fourth

causes of action are insufficient to support a plausible claim for relief.  The Motion will therefore

be granted as to these causes of action.

---

[91]  Complaint at ¶ 51.

[92]  *See also Weigele*, 2010 U.S. Dist. LEXIS 120475, at *11 (dismissing complaint that alleged, "During the Class Period [sic], the Defendant required Plaintiffs to work without being given paid ten minute rest periods for every four hours or major fraction thereof worked . . . , nor did Defendant pay any Plaintiffs [sic] one hour's pay at the employee's regular rate of pay as premium pay compensation for failure to provide rest . . . periods. Defendant's conduct violated the applicable Wage Orders and Labor Code section 226.7").

[93]  *Varsam*, 120 F. Supp. 3d at 1178–79.

[94]  Complaint at ¶ 57.

**VI.     The Fifth Cause of Action Fails to Adequately Plead a Claim for Relief for Failure to Provide Notice of COBRA Rights**

H.I.G. argues that the fifth cause of action fails to allege that H.I.G. was a plan administrator or otherwise responsible for issuing notices under the terms of the applicable ERISA plan pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").[95]  It argues that even if H.I.G. is a "qualifying employer," the Complaint misrepresents an employer's legal obligations under COBRA and that the plan administrator, not H.I.G., is required to provide notice of the plan beneficiaries' rights.[96]  Further, H.I.G. maintains that "continuation coverage" does not extend past "the date on which the employer ceases to provide any group health plan to any employee."[97]  H.I.G. asserts that as a result, any obligations to provide COBRA notice ended when Jenny Craig terminated its employee health insurance plan since Jenny Craig's former employees could not elect to continue coverage under an employee health insurance plan which no longer existed.[98]

The Plaintiffs counter that, while the Complaint does not specifically state that H.I.G. is the plan administrator, it does sufficiently allege that a qualifying event triggered a qualifying employer's obligations and that the Plaintiffs did not receive the mandated notice.[99]  The Plaintiffs argue an inference can be drawn from the allegations in the Complaint that H.I.G. did not satisfy its obligation to provide COBRA notice, and that the question of whether H.I.G. was a "qualifying employer" is a question of fact not properly raised at this stage.[100]

---

[95] Opening Brief at 14.

[96] *Id.*

[97] *Id.* (citing 29 U.S.C. § 1162(2)(B)).

[98] *Id.*

[99] Opposition Brief at 13.

[100] *Id.*

COBRA and its accompanying regulations provide that the administrator of a group health plan subject to the COBRA continuation coverage requirements shall provide notice to each qualified beneficiary of the rights to continuation of coverage under the plan.[101]  A qualified beneficiary is an employee, or spouse or dependent child of the employee, who on the day before the qualifying event is covered by the employer's group health plan.[102]  A qualifying event is, among other things, the termination or reduction of hours of a covered employee's employment, provided that the termination causes the qualified beneficiary to lose coverage under a plan.[103] COBRA requires the employer to inform the health plan's administrator of a covered employee's qualifying event within 30 days.[104]  The plan administrator must then furnish the required notice to the qualified beneficiary.[105]

ERISA's civil enforcement provision only provides a plan participant or beneficiary a cause of action for failure to notify of COBRA rights against a plan administrator.[106]  It does not provide for a cause of action for failure to notify of COBRA rights against an employer.[107]

Although the Complaint alleges H.I.G. is a qualified employer, it fails to allege that H.I.G. is the plan administrator responsible for sending the Plaintiffs notice.[108]  A qualified

---

[101]  29 C.F.R. § 2590.606-4(a).

[102]  29 U.S.C. § 1167(3).

[103]  *Id.* § 1163(2).

[104]  *Id.* § 1166(a)(2).

[105]  *Id.* § 1166(a)(4).

[106]  *Id.* § 1132(a)(1)(A), (c)(1); *Forbush v. NTI-CA Inc.*, No. 22-cv-00141-H-RBB, 2025 U.S. Dist. LEXIS 20781, at *19 (S.D. Cal. Feb. 5, 2025) (citing *Jass v. Cherryroad Techs., Inc.*, 472 F. Supp. 3d 787, 801 (D. Haw. 2020)).

[107]  *Forbush*, 2025 U.S. Dist. LEXIS 20781, at *19 (first citing *Marceau v. Dep't of Ins.*, No. 1:09-CV-00514-N-EJL, 2011 U.S. Dist. LEXIS 87076, at *11 (D. Idaho Aug. 5, 2011) ("While it is true that notification of such rights must be provided to a 'qualified beneficiary' upon the occurrence of a 'qualifying event,' the clear text of the statute provides that it is not the obligation of an employer to do so."); then citing *Vincent v. Wells Fargo Guard Servs., Inc.*, 44 F. Supp. 2d 1302, 1304–05 (S.D. Fla. 1999) (granting summary judgment of plaintiff's § 1166 claim on the grounds that defendant was his employer and not the plan administrator)).

[108]  *See Weatherly v. Fall Creek Condo. Owners' Ass'n*, No. 16-03356-CV-S-DPR, 2017 U.S. Dist. LEXIS 224169,

employer is not necessarily a plan administrator.[109]  The Plaintiffs admit they did not name the

plan administrator in the Complaint and argue their failure to do so is an imperfect statement of

the legal theory; they ask this Court to infer that H.I.G. did not satisfy its obligation to provide

COBRA notice.[110]  However, on its face, there is no allegation in the Complaint with respect to

the identity of the plan administrator.  The Third Circuit has counseled that a complaint may not

be amended by the briefs in opposition to a motion to dismiss.[111]  And, courts routinely grant

motions to dismiss complaints for failure to adequately identify the plan administrator.[112]

Accordingly, the Court will grant the Motion as to the fifth cause of action.

## VII.    The Plaintiffs' Breach of Contract Cause of Action is Pre-Empted by ERISA

H.I.G. argues the sixth cause of action, breach of contract, is completely pre-empted by

ERISA because if references the employer sponsored health insurance and there is no legal duty

implicated by the breach of contract that exists outside of the ERISA plan.[113]  Second, H.I.G.

argues the cause of action is conflict pre-empted because it "relates to" an ERISA plan.[114]  The

---

at *7 (W.D. Mo. June 21, 2017).

[109]  *Weatherly*, 2017 U.S. Dist. LEXIS 224169, at *7; *Crotty v. Dakotacare Admin. Servs., Inc.*, 455 F.3d 828 (8th Cir. 2006) (plaintiff's employer was not the plan administrator).

[110]  Opposition Brief at 13.

[111]  *Com. of Pa. ex rel. Zimmerman v. PepsiCo*, 836 F.2d at 181.

[112]  *See Weatherly*, 2017 U.S. Dist. LEXIS at *7 (dismissing a complaint for failure to name the plan administrator); *see also Guzman v. Macy's Retail Holdings, Inc.*, No. 09-4472 (PGG), 2010 U.S. Dist. LEXIS 29544, at *8 (S.D.N.Y. Mar. 29, 2010) (finding plaintiff's COBRA claim defective where it failed to name the plan administrator); *Johnson v. Dollar General*, 778 F. Supp. 2d 934, 951 (N.D. Iowa 2011) (concluding that the plaintiff's complaint was defective because it made "no allegations regarding the identity of his plan administrator"); *Vorachak v. Alden Estates of Barrington, Inc.*, No. 07 C 3045, 2007 U.S. Dist. LEXIS 79526, at *7 (N.D. Ill. 2007) (holding that "in the absence of an allegation regarding the identity of Plaintiff's plan administrator," the COBRA claim must be dismissed); *Thomason v. First Pryority Bank*, No. 09-CV-796-GKF-TLW, 2010 U.S. Dist. LEXIS 50288, at *4 (N.D. Okla. 2010) (determining that plaintiff failed to state a claim under which relief could be granted because the complaint did not allege the defendant was the plan administrator); *cf. Pickar v. Grouper Acquisition Co., LLC*, No. 1:25-cv-0055, 2025 U.S. Dist. LEXIS 83659, at *3 (N.D. Ohio Apr. 29, 2025) (denying a motion to dismiss, but recommending that the plaintiff dismiss a defendant who argued they were not the plan administrator and therefore were not responsible for sending COBRA notices).

[113]  Opening Brief at 15–16.

[114]  *Id.* at 17.

Plaintiffs assert the cause of action is not pre-empted because it involves independent legal duties, and because the it is "a garden variety damages claim derivative of the breach itself and does not necessitate interpretation of the health care plan itself."[115]  They also argue that regardless of any pre-emption concern, the Court should construe the claim for relief as an ERISA claim moving forward.[116]

The Employee Retirement Income Security Act ("ERISA") includes expansive pre-emption provisions,[117] which are intended to ensure that employee benefit plan regulation is "exclusively a federal concern."[118]  "[A]ny state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear intent of Congress to make the ERISA remedy exclusive and is therefore pre-empted."[119]  ERISA preempts state law causes of action if two conditions are met: (1) an individual, at some point in time, could have brought the claim under ERISA, and (2) there is no other independent legal duty that is implicated by a defendant's actions.[120]

Denials of coverage promised under the terms of ERISA-regulated employee benefit plans are typically pre-empted.[121]  Courts regularly hold that causes of action against an

---

[115]  Opposition Brief at 14.

[116]  *Id.* at 15.

[117]  *See* 29 U.S.C. § 1144.

[118]  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing *Alessi* v. *Raybestos-Manhattan, Inc.*, 451 U.S. 504, (1981)).

[119]  *Id.* at 209.

[120]  *Id.* at 210.

[121]  *See e.g., id.* at 211–18; *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62 (1987); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 135 (1990); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014) ("Because these claims explicitly require reference to the plan and what it covers, they are expressly preempted.").

employer based on deductions from employee paychecks and a failure to provide health

insurance under an employee benefit plan must be brought under ERISA.[122]

The Complaint alleges H.I.G. breached the employment contract it had with the Plaintiffs

because it made deductions from the Plaintiffs' monthly paychecks and subsequently failed to

provide continued health insurance.[123]  The case law makes clear that state law cause of action

based on such allegations are pre-empted by ERISA.  The Court will therefore grant the Motion

to Dismiss as to the breach of contract claim.

## VIII.   Punitive Damages are not Available for ERISA Claims

H.I.G. argues the claim for punitive damages in connection with the breach of contract

must be stricken because ERISA does not authorize such relief.[124]  The Plaintiffs counter that the

breach of contract claim is not pre-empted by ERISA, and that they have alleged the actions of

H.I.G. were made with malice and disregard for the Plaintiffs' rights with the intention design

---

[122] *See e.g., Washington v. Lenzy Family Inst., Inc.*, No. 1:21-cv-1102, 2023 U.S. Dist. LEXIS 186702, at *9 (N.D. Ohio Oct. 18, 2023) (holding that claims against an employer for failure to remit deductions from employee paychecks must be brought under 29 U.S.C. § 1132(a)(3)); *McFadden v. R&R Engine & Mach. Co.*, 102 F. Supp. 2d 458, 469 (N.D. Ohio 2000) (holding that a breach of fiduciary duty claim for an employer's failure to pay health insurance premiums for employees who had the money deducted from their paychecks must be brought under 29 U.S.C. § 1132(a)(3)); *Munsey v. Tactical Armor Prods., Inc.*, No. 3:07-CV-445, 2008 U.S. Dist. LEXIS 86618, at *4 (E.D. Tenn. Sep. 25, 2008) (Plaintiffs conceding that their claims for deducting money and failing to pay health insurance premiums were pre-empted by ERISA, and the court holding "the Court will grant defendants' motion to dismiss plaintiffs' amended complaint based upon ERISA preemption to the extent that plaintiffs' state law claims are dismissed, but this case will not be dismissed [in] its entirety because plaintiffs now allege claims under ERISA"); *Holloway v. Doug Fisher Inc.*, 865 F. Supp. 412, 418–19 (E.D. Mich. 1994) (holding that a claim for an employer's failure to pay health coverage premiums with money deducted from paycheck deductions was preempted by ERISA); *see also Klaiss v. Steel Tool & Eng'g Co.*, No. 18-12053, 2019 U.S. Dist. LEXIS 144424, at *11 (E.D. Mich. Aug. 26, 2019) (holding that a claim against an employer for unjust enrichment based on deducting money from employee paychecks was "tantamount to an action seeking return of contributions made under the terms of the plan and for restitution of any overpayments under [ERISA's civil enforcement provision]"); *Jackson v. Wal-Mart Stores, Inc.*, 24 F. App'x 132, 133 (4th Cir. 2001) (affirming the district court's finding that ERISA preempted an employee's claims "alleging that [his employer] made excessive deductions from his wages for insurance premiums").

[123]  Complaint at ¶73–74.

[124]  Opening Brief at 18.

and purpose of injuring them. [125]

Courts have consistently held that ERISA does not authorize punitive damages.[126]  The claim for breach of contract is pre-empted by ERISA.  The Court will therefore strike the claim for punitive damages.

## IX.    Leave to Amend the Complaint

In their Opposition Brief, the Plaintiffs request leave to amend the Complaint to cure any insufficiencies.[127]  H.I.G. argues granting leave to amend the Complaint would be futile because the Plaintiffs have not and cannot provide any factual basis for holding H.I.G. liable for what are really claims for relief against Jenny Craig.[128]  H.I.G. further contends that the Plaintiffs fail to identify any additional facts which, even if permitted, could in good faith save their Complaint.[129]

The Supreme Court instructs: "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[130]  Likewise, the Third Circuit consistently holds that leave to

---

[125]  Reply at 18.

[126]  *Pane v. RCA Corp.*, 868 F.2d 631, 635 n.2 (3d Cir. 1989) (collecting authorities); *Richardson-Roy v. Fid. Invs.*, No. 14-371-RGA, 2015 U.S. Dist. LEXIS 42574, at *11 (D. Del. Apr. 1, 2015) ("Plaintiff may not recover under her theories or allegations seeking punitive damages, sanctions and other penalties given that they are preempted by ERISA."); *Huss v. Green Spring Health Servs., Inc.*, 18 F. Supp. 2d 400, 408 (D. Del. 1998).

[127]  Opposition Brief at 18–19.

[128]  Reply at 10.

[129]  *Id.*

[130]  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

amend should be granted freely.[131]  "This approach ensures that a particular claim will be decided on the merits rather than on technicalities."[132]

The Court disagrees with H.I.G. that there are no additional facts which, if permitted, could save the Complaint.  The Court will therefore grant the Plaintiffs leave to amend the Complaint.

## CONCLUSION

For the foregoing reasons, the Court will grant the Motion and will grant the Plaintiffs leave to amend the Complaint.

The Court will issue a separate order consistent with this Opinion.

Dated:  August 13, 2025

J. Kate Stickles
United States Bankruptcy Judge

---

[131] *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990); *Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing*, 663 F.2d 419, 425 (3d Cir. 1981); *see also Bechtel v. Robinson*, 886 F.2d 644 (3d Cir. 1989) (holding that the court should use "strong liberality" in considering whether to grant leave to amend).

[132] *Dole*, 921 F.2d at 486.